## MORGENSTERN & CO. *v.* UNITED STATES (No. 481).[1]

PERBORATE OF SODIUM, A CHEMICAL COMPOUND.

Under neither the tariff act of 1897 nor the tariff act of 1909 may perborate of sodium be classed as borate material. It is the product of a chemical reaction, is a chemical compound, and dutiable as such under paragraph 3 of each of said acts.

## United States Court of Customs Appeals, October 12, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23840 (T. D. 30865).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The merchandise involved in this case is perborate of sodium imported under the tariff acts of 1897 and 1909. This perborate was classified by the collector of customs as a chemical compound not specially provided for and that part of it which was imported under the tariff act of 1897 was assessed for duty under the following paragraph thereof:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all *chemical compounds* and salts not specially provided for in this act, *twenty-five per centum ad valorem.*

The perborate which was imported under the tariff act of 1909 was assessed for duty under paragraph 3 thereof, which is as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all *chemical compounds,* mixtures and salts, and all greases, not specially provided for in this section, *twenty-five per centum ad valorem;* chemical compounds, mixtures and salts containing alcohol or in the preparation of which alcohol is used, and not specially provided for in this section, fifty-five cents per pound, but in no case shall any of the foregoing pay less than twenty-five per centum ad valorem.

The importers protested that all of the merchandise whether imported under the tariff act of 1897 or under that of 1909 was dutiable as a borate material under the following paragraphs of said acts:

Act of 1897:

11. Borax, five cents per pound; borates of lime or soda, or other borate material not otherwise provided for, containing more than thirty-six per centum of anhydrous boracic acid, four cents per pound; borates of lime or soda, or *other borate material not otherwise provided for, containing not more than thirty-six per centum of anhydrous boracic acid, three cents per pound.*

Act of 1909:

11. Borax, two cents per pound; borates of lime, soda, or *other borate material not otherwise provided for in this section,* two cents per pound.

---

[1] Reported in T. D. 31949 (21 Treas. Dec., 387).

The Board of General Appraisers overruled the protests and the importers appealed. The evidence shows that perborate of sodium is a comparatively recent creation of the chemical laboratory and that it is not found in a state of nature. It is manufactured by bringing together borate of sodium and peroxide of hydrogen in such a way that a chemical reaction is caused, as a result of which perborate of sodium is produced. There are some differences between the witnesses as to the chemical formula of borate of soda, and none of them is wholly sustained by chemical treatises on the subject. The testimony, however, is uncontradicted that perborate of sodium contains one atom more of oxygen than does the borate and that chemically speaking they are different articles. From this evidence the conclusion must be drawn that the perborate of sodium is not borate of soda, and that as it is the product of a true chemical reaction artificially produced, it is a chemical compound.

Counsel for the importers contend, however, that the merchandise in question is a *borate material*, and that as the provision for borate material in paragraph 11 of both acts is narrower and more specific than that for chemical compounds in paragraph 3 it should be classified under the former paragraph instead of the latter. We can not wholly agree with this contention. The expression "borates of lime and soda, or other borate material" in paragraph 11 of the tariff act of 1897 and the expression "borates of lime, soda, or other borate material" in paragraph 11 of the tariff act of 1909 were, in our opinion, intended to cover only those borate materials which are found in nature and were not meant to embrace borates artificially produced. The borate of lime and borate of soda referred to in these paragraphs as borate materials are crude, natural products, from which it is commercially practicable to manufacture borax, boracic acid, and chemically prepared borates, and the phrase "other borate material" must on the principle of *noscitur a sociis* be held to refer to like natural substances. Hempstead *v.* Thomas (129 Fed. Rep., 907). Counsel takes exception to the Hempstead case as authority and argues that as there are in nature no borate materials which contain more than 36 per cent of anhydrous boracic acid the interpretation there given to paragraph 11 of the tariff act of 1897 would render inoperative and of no effect that part of it which imposes a duty on borate materials containing more than 36 per cent of anhydrous boracic acid. In answer to this objection to the authority of the Hempstead case it might be sufficient to say that a reference to scientific works other than those mentioned by the witnesses shows that sassoline, a native boric acid found in the hot springs of Sasso, Tuscany, contains 56.45 per cent of anhydrous boric or boracic acid. (Wagner's Chemical Technology, p. 427.)

From this work and Spon's Encyclopedia it also appears that very high percentages of boracic acid are found in other natural products, such as tincal or crude borax, which contains 36.53 per cent; rhodicite, which contains from 30 to 45 per cent; boracite or magnesium borate and chlorate, which contains 62.5 per cent; hayescine, tiza, or calcium borate, which contains from 30 to 44 per cent. (Wagner's Chemical Technology, p. 427; Spon's Encyclopedia, vol. 1, pp. 526–527.) Possibly a percentage of more than 36 per cent of anhydrous boracic acid in native borates is confined to sassoline or is so exceptional that the difference between scientific authorities may be accounted for by the rarity of its occurrence. But however that may be, the very fact that more than 36 per cent of anhydrous boracic acid is claimed for such a large source of supply as the springs of Sasso, the uncertainty as to whether as large a percentage might not be found in other natural substances, and the existence of a difference of opinion as to maximum percentages contained in native materials, were ample justification for the distinction made by Congress in a protective tariff between borates containing more and borates containing less than 36 per cent of anhydrous boracic acid, and from that distinction it can not be logically deduced that the provision was intended to cover both manufactured and native borates. That Congress regarded or could have regarded manufactured borates as borate material, that is, a material for the making of borates, does not seem to us probable or reasonable in view of the fact that such a use of manufactured borates was commercially impracticable. Manufactured borates are made by combining boracic acid with a metal base, and as boracic acid is derived from natural substances it seems to follow that the cost of production alone would absolutely preclude the commercial manufacture of borates from borates artificially evolved. The use of manufactured borates to make other borates necessarily implies the development of boracic acid from native products, its combination with some metal, and then its redevelopment in order to combine it with another. On its face such a method of making borates is needlessly costly and too circuitous for practical commercial use. We can not, therefore, assume or presume that the legislature ever intended that the term "borate material" should cover or include manufactured borates.

But whether the expression "other borate material" refers exclusively to natural products or includes both native and artificial borates, we think that perborate of sodium can not be regarded as a material on the evidence presented in the record. A material is not merely a substance—an article—but a substance, matter, article, or thing from which some other substance, matter, article, or thing is to be produced, manufactured, constructed, or made. Perborate

of sodium is manufactured for use in laundries as a cleansing agent, for bleaching, and for antiseptic and other medical purposes. It is itself a finished manufactured product evolved from borate materials, and, so far as the evidence discloses, it is not intended nor is it commercially available as a material for the manufacture of borates, or of anything else for that matter.

The decision of the Board of General Appraisers is *affirmed.*