BEFORE THE FIRST DIVISION, SEPTEMBER 13, 1946

**No. 51301.**—Protest 121823–K of Mary Dunhill, Inc. (New York).

OLIVER, Presiding Judge:   The merchandise in this suit consists of stamped sterling silver initials (alphabetical letters) imported from Mexico.   Duty was assessed thereon at the rate of 80 percent ad valorem under the provisions of paragraph 1527 (d), Tariff Act of 1930, which read:

(d) Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any of the foregoing articles in this paragraph, if of gold or platinum, 75 per centum ad valorem; if of other metal or metals, plated or unplated, 80 per centum ad valorem.

Several claims are made in the protest but the one principally relied on is that these initials are properly dutiable at the rate of 32½ percent ad valorem under the provision of paragraph 397, as modified by the trade agreement with Mexico (schedule III), T. D. 50797, which reads:

Articles or wares, not specially provided for, if composed wholly or in chief value of silver.

It is conceded that the initials are made of silver.   The imported merchandise (collective exhibit 1) consists of pieces of thin silver measuring ⅝″ x ⅞″ in the form of block letters.

The witness for the plaintiff, connected with the plaintiff company for 22 years, testified that after importation the initials are sent to a factory to be gold-plated and the backs gummed.   Samples are in evidence (collective illustrative exhibit 2) representing the articles after being subjected to that process.   There are also before us (collective illustrative exhibit 3) two small bottles described as "personalized cologne" bottles.   These glass bottles, rectangular in shape, are recessed on one side to take either two or three of the imported letters.   The witness stated that an assortment of initials in the condition as shown by illustrative exhibit 2 is sent along with an order for "personalized cologne" so that the customer, when selling the cologne, can apply the initials to the bottle, and that the initials imported by the plaintiff are used only for that purpose.   There is in evidence a bottle with the initials in place thereon (illustrative exhibit 4, R. 7). The witness further testified that he had never seen the imported articles used

in any other manner and that the indentations on the bottles (collective illustrative exhibit 3) are for the purpose of receiving these initials.

Two witnesses testified for the defendant. One, a buyer and salesman for a manufacturer of costume jewelry, testified he had handled articles like collective exhibit 1 for 7 or 8 years (R. 9), and that such articles with a gummed back were sent to individual customers who applied them to wallets, cigarette cases, handbags, and things of that nature. He had seen this same type of article used on jewelry, such as pins with a prong and safety catch, as initial pins (R. 10), and on cigarette cases, vanity cases, compacts, and used in the manufacture of brooch pins. He stated that there was quite a wide variation of sizes and patterns of all the initials (R. 11).

As to their use in the manufacture of jewelry, the witness stated that "These stampings could be used as jewelry" (R. 13) and could be used to make a pin (R. 18). As to initials he saw used on handbags, the witness stated that the handbags were leather and that the initials had prongs on them (R. 14). As to their use on compacts and cigarette cases, the witness stated (R. 16):

Well, I don't think the compact or the cigarette case and the initials themselves have anything to do with the manufacturing of one another.

The second witness for the defendant, a production manager for a company manufacturing jewelry findings for the jewelry trade (R. 20), testified that he had handled articles similar to collective exhibit 1 (R. 22) and had seen them used as initials on hats or as a pin for a dress or as a coat pin (R. 23); that he had seen them used on vanity cases, powder cases, brooch or bar pins, and on belt buckles (R. 23–24). They are finished articles (R. 25). Regarding their use in pins, he stated he had seen them in various stores and store windows (R. 26). Questioned further, the witness stated (R. 28):

X Q. And they are never used as initials are used, as these initials are used, to add to a completed article by way of dressage or as a label or identification of it?—A. No.

The only issue presented is whether these initials are stampings or other materials of metal suitable for use in the manufacture of any of the articles enumerated in paragraph 1527 within the meaning of subsection (d). The paragraph provides for jewelry, subsection (a); rope, curb, cable, and fancy patterns of chain, subsection (b); and articles designed to be worn on apparel or carried on or about or attached to the person, subsection (c).

The plaintiff contends that these initials are not "material" within the meaning of paragraph 1527 (d) and cites the case of *Morgenstern* v. *United States*, 2 Ct. Cust. Appls. 212, T. D. 31949, wherein the court stated:

* * * A material is not merely a substance—an article—but a substance, matter, article, or thing from which some other substance, matter, article, or thing is to be produced, manufactured, constructed, or made. * * *

The defendant contends that the evidence adduced shows clearly that the initials involved herein are stampings as used in the jewelry trade and are suitable for use in the manufacture of jewelry.

The words "suitable for use" have been held to mean that the article or material is actually, practically, and commercially suitable. A possible use of a thing cannot be accepted as proof of suitability for such use. *Kahlen* v. *United States*, 2 Ct. Cust. Appls. 206, T. D. 31947; *United States* v. *Lorsch*, 8 Ct. Cust. Appls. 109, T. D. 37222.

The evidence adduced by the plaintiff herein has overcome the presumption of correctness attaching to the classification of the collector, and the testimony introduced by the defendant in support of the collector's classification has not established as a fact that these imported initials are actually, practically, and

commercially suitable for use in the manufacture of jewelry or any of the other articles mentioned in paragraph 1527.

The fact that similar initials are used to embellish handbags, cigarette cases, and other articles named in paragraph 1527 (c) does not establish that they are used or suitable for use in the *manufacture* of such articles. They are placed on the article after it is manufactured, not as a part thereof but as an adjunct, accessory, or a mark of identification, and not as material used in the manufacture of the article.

On the record before us and for the reasons above pointed out, we find that these initials do not fall within the meaning of the provisions of paragraph 1527 (d) as stampings, or other materials of metal, suitable for use in the manufacture of any of the articles mentioned therein. Therefore, we hold them to be properly dutiable at 32½ percent ad valorem under the provision of paragraph 397, as modified by the trade agreement with Mexico, T. D. 50797, as claimed. That claim in the protest is sustained. As to all other claims, the protest is overruled. Judgment will be rendered accordingly.